UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| TIBERIUS MAYS, N-92625 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 01-1254 |
| | ) | |
| JEROME SPRINGBORN, DARRYL JOHNSON, | ) | |
| MICHAEL ETHERIDGE, THOMAS HOYT, and | ) | |
| KEVIN HANTELMANN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COME Defendants, DARRYL JOHNSON and MICHAEL ETHERIDGE, JR., by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and in support of their Renewed Motion for Judgment as a Matter of Law submits the following memorandum of law:

### BACKGROUND

Plaintiff claims that Defendants Etheridge and Johnson violated Plaintiff's rights under the First, Fourth, and Eighth Amendments on June 9, 1999, by strip searching Plaintiff in front of other prisoners and in an extended and harassing manner intended to humilate and cause psychological pain in order to punish the Plaintiff for making written and verbal complaints to prison officials about prison officials and their conduct towards him.  A trial in this matter was held in which the jury returned a verdict in favor of Plaintiff for Counts 2 and 3 and awarded Plaintiff $2,500 in compensatory damages and $10,000 in punitive damages.  On May 28, 2014, judgment in this matter was entered.

## ARGUMENTS

**I.       STANDARD**

Under Rule 50(a) of the Federal Rules of Civil Procedure, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 2109 (2000). The standard for granting judgment as a matter of law mirrors the standard for the granting of summary judgment. Id. at 150, 120 S. Ct. at 2110 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)). In considering a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed. Diedidmber v. Cincinnati Sub-Zero Products, 58 F.3d 341, 343 (7th Cir. 1995).

If there are genuine factual issues that can be properly resolved only by a finder of fact because they may be reasonably resolved in favor of either party, judgment as a matter of law should not issue. Anderson, 477 U.S. at 250. However, if there are no material issues of fact, judgment as a matter of law should be granted. Id. at 247.

Where there can be but one reasonable conclusion as to the verdict, a motion for judgment as a matter of law should be granted. Id. at 250. The trial judge must not ask himself whether he thinks the evidence unmistakably favors one side or the other, but rather whether a fair-minded jury could return a verdict in favor of the plaintiff on the evidence presented. Id. at 252. In determining whether to grant a motion for judgment as a matter of law, the Court must decide whether a jury could reasonably find that the

plaintiff proved his case by the quality and quantity of evidence required by the governing law or whether he did not meet this burden. Id. at 254.

The mere existence of some alleged factual dispute between the parties will not defeat a motion for judgment as a matter of law. Id. at 247-48. Factual disputes that are irrelevant or unnecessary cannot create an issue sufficient to overcome a motion for judgment as a matter of law. Id. at 248. Only disputes over facts that might affect the outcome of the suit under the governing law preclude entry of judgment as a matter of law. Id. at 248. If the evidence is merely colorable or is not significantly probative, it is proper to grant judgment as a matter of law. Id. at 249-50.

Substantive law identifies which facts are material. Id. at 248. The Court must view the evidence presented through the prism of the substantive evidentiary burden. Id. at 254. Judges are not required to submit a question to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence is of such a character that would warrant the jury finding a verdict in favor of that party. Formerly, the standard was based upon whether there was a scintilla of evidence to support an issue. If so, the judge was bound to have the jury decide the matter. However, Supreme Court decisions have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any evidence upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Id. at 251 (citing Improvement Co. v. Munson, 14 Wall. 442, 448 (1872)). Thus, when the movant has met the burden of showing no material issue of fact exists, judgment as a matter of law is appropriate. Id. at 256.

On a motion for judgment as a matter of law, the pertinent question is whether there is "enough evidence to permit the jury to consider the ultimate question of discrimination." See Harvey v. Office of Banks and Real Estate, 377 F.3d 698, 708 (7th Cir. 2004). Though the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden shifting "drops out once a case goes to trial," Wilson v. AM General Corp., 167 F.3d 1114, 1123 n.1 (7th Cir. 1999), the Court must look to the totality of the evidence to determine whether Plaintiff presented sufficient evidence to support a finding in his favor. Harvey, 377 F.3d at 708.

### II. To the Extent Defendants are Sued in Their Individual Capacities, They are Entitled to Qualified Immunity

Insofar as Defendants have been sued in their individual capacities, they are entitled to qualified immunity. At the close of the evidence, counsel argued Defendants were entitled to qualified immunity. Qualified immunity is a defense available to state and federal officials to ensure protection when they are required to exercise their discretion. Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). Qualified immunity is an issue for the Court, not for the jury. Matby v. Winston, 36 F.3d 548, 554 (7th Cir. 1994). Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages. Harlow, 457 U.S. at 818. Qualified immunity is a privilege of "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow, 457 U.S. at 818. "The right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. . . ; the unlawfulness must be apparent" in the light of preexisting law. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Unless it has been authoritatively decided that certain conduct is forbidden, the public official is entitled to qualified immunity. Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993). The plaintiff has the burden of establishing the existence of the alleged clearly established constitutional right by reference to closely analogous cases. Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). "[I]t is not the simple existence of analogous case law that defeats the claim of qualified immunity; rather, these decisions must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law." Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 620 (7th Cir. 2002). A plaintiff can establish that a right was clearly established by presenting case law that "has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand." Id.

Supreme Court precedent requires Defendants to be able to understand from relevant case law that the strip search performed on June 9, 1999, violated Plaintiff's constitutional rights under the First, Fourth, and Eighth Amendments. In the context of prison strip searches, the law at the time as to whether or not inmates enjoyed any protections under the Fourth Amendment against unreasonable searches and seizures, held that "regardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches, notably when their aim is punishment, not legitimate institutional concerns." Peckham v. Wisconsin Dept. Of Corrections, 141 F.3d 694, 697 (7th Cir.

1998). Additionally, Peckham held that:

> given the considerable deference prison officials enjoy in
> their institutions it is difficult to conjure up too many real-life
> scenarios where prison strip searches of inmates could be
> said to be unreasonable under the Fourth Amendment.. . . More
> importantly, regardless of how one views the Fourth Amendment
> in this context, it is the Eighth Amendment that is more properly
> posed to protect inmates from unconstitutional strip searches,
> notably when their aim is punishment, not legitimate institutional
> concerns.

Id. at 697. Therefore, under the Fourth Amendment, inmates could be strip searched and if a prison employee conducted a strip search for what he believed to be valid penological reasons, the strip search was reasonable under the Fourth Amendment. In this case, Plaintiff did not dispute that Defendants had legitimate penological reasons related to security in conducting strip searches. Instead, Plaintiff maintained the strip search was performed to punish him. If this allegation is believed to be true, the law announced in Peckham would not have put Defendants on notice that they were allegedly violating Plaintiff's Fourth Amendment rights at the time of the search as Fourth Amendment protections did not apply to a strip search performed to punish an inmate. Therefore, to the extent Plaintiff maintained Defendants performed the strip search at issue to punish him, Plaintiff could not prevail in a suit claiming his Fourth Amendment rights had been violated. As such, Defendants are entitled to qualified immunity on this issue.

As for the First and Eighth Amendments and the law of the case, Plaintiff failed to show any intent by Defendants. Under the Eighth Amendment, Plaintiff failed to show the strip search was performed with an intent to humilate, punish, and harrass him. Under the First Amendment, Plaintiff failed to show the strip searches were performed with an intent to retaliate against Plaintiff for showing Defendants his

grievances or informing them of prison rules. Plaintiff conceded that Defendants had legitimate penological reasons related to security in conducting strip searches. Defendants also testified concerning their intent regarding the strip search. Plaintiff offered no testimony concerning Defendants' mental state or intent. Defendants are not aware of a case in which correctional officers can be found liable for performing a strip search in retaliation for filing a grievance or complaining about prison rules without Plaintiff establishing Defendants' intent in performing the strip search. To the extent Plaintiff relied on his grievance and the Briley memo to show some type of intent, Plaintiff never testified that he showed these documents to Defendant Etheridge or that Defendant Etheridge knew of said documents or had read said documents prior to the search. With Defendant Johnson, while Plaintiff testified to showing these documents to him, everyone was supposed to infer that Defendant Johnson's head nod to Defendant Etheridge conveyed some evil intent on his part regarding Plaintiff. Because Plaintiff failed to show intent concerning the First and Eighth Amendment violations, Defendants are entitled to qualified immunity.

### III. Defendants Had No Personal Involvement in Plaintiff's Alleged Handcuff Injuries or What Transpired in the Healthcare Unit

Liability under §1983 requires that there be a direct, personal responsibility on the defendant's part for those acts or omissions claimed to have deprived plaintiff of his rights. Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982); Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard of plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation. Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985). "Section 1983 will not support a claim based

on a *respondeat superior* theory of liability." Polk County v. Dodson, 102 S.Ct. 445, 453 (1981); Duncan, at 655, citing Adams v. Pate, 445 F.2d 105, 108 (7th Cir. 1971); see also Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). In order for a supervisor to be liable under §1983, he must be personally responsible for the deprivation of the constitutional right. Matthews v. City of East St. Louis, 675 F.3d 703, 708 (7th Cir. 2012). To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye to the conduct. Id. A supervisor who is merely negligent in failing to detect or prevent subordinate's misconduct is not liable under §1983 because negligence is not culpable. Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988).

In Counts 2 and 3, Plaintiff claimed that as a result of the strip search, he was handcuffed, taken to the Healthcare Unit, forced to wear a gown that did not adequately cover his body, and required to defecate before he could he go back to his cellhouse. Plaintiff testfied that the handcuffs caused him wrist pain and that he had deep red marks on his wrists. It was this physical injury that Plaintiff used to manueuver around an award of nominal damages. However, there was no evidence of Defendants' personal involvement in Plaintiff's handcuff injuries as there was no testimony that Defendants handcuffed Plaintiff, ordered staff to leave Plaintiff handcuffed, ordered the manner and and length of time Plaintiff was handcuffed, or were present for Plaintiff to complain to them about his handcuffs and they refused to take action. Nor, was there any evidence showing that Defendants ordered or knew of the alleged events that transpired in the Healthcare Unit, how long Plaintiff would stay in in the Healthcare Unit, or that they still maintained control over the Plaintiff after he was taken to the

Healthcare Unit.

For Defendant Etheridge, there was no evidence showing he was a supervisory employee at the time of the alleged events, therefore, Plaintiff had to show Defendant's direct personal involvement in the injury from the handcuffs and his injuries while in the Healthcare Unit. Plaintiff failed to do this. There was no testimony showing that Defendant Etheridge handcuffed Plaintiff, that he was present in the Healthcare Unit and observed the condition of Plaintiff's wrists and failed to release the handcuffs at issue, or that he knew Plaintiff would remain handcuffed behind his back for 5 hours. Nor, was there any evidence establishing that Defendant Etheridge knew Plaintiff would be given an inadequate gown, that he would be seen by other staff members and medical staff, and that he would be required to stay in the Healthcare Unit for 5 hours. Instead, Plaintiff testified that Sgt. Stigler handcuffed Plaintiff, he did not see any of the Defendants speak with the Medical Director or Sgt. Stigler, and that Defendants were not present in the Healthcare Unit while Plaintiff was there. Because Plaintiff did not establish Defendant Etheridge's direct personal involvement in the handcuffing of Plaintiff and in the events that transpired in the Healthcare Unit, Plaintiff was precluded from obtaining compensatory and punitive damages against Defendant when said compensatory and punitive damages covered Plaintiff's alleged injuries for his wrists and the events that occured in the Healthcare Unit. Therefore, Plaintiff should not have been allowed to seek damages on these issues against Defendant Etheridge and judgment should be granted in Defendant's favor.

As for Defendant Johnson, there was no evidence showing that as a supervisory employee, he knew about the conduct, (handcuffing, inadequate gown, being seen by

other staff members and medical staff, and staying in the Healthcare Unit for 5 hours), and facilitated it, approved it, condoned it, or turned a blind eye to the conduct. In order to have established this, Plaintiff would have had to present evidence showing that Defendant knew: a) Sgt. Stigler would handcuff Plaintiff behind his back and leave him in said position without relief for 5 hours, and b) Plaintiff was given an inadequate gown and was seen by other staff members and medical staff. And with this particularized knowledge, Defendant facilitated, approved, condoned, or turned a blind eye to all of it. Defendant Johnson testified to escorting Plaintiff to the Healthcare Unit so that he could be seen by healthcare staff. Plaintiff testified that Sgt. Stigler handcuffed Plaintiff, he did not see any of the Defendants speak with the Medical Director or Sgt. Stigler, and that Defendants were not present in the Healthcare Unit while Plaintiff was there. Therefore, Plaintiff failed to introduce any evidence showing that Defendant Johnson was involved in any way with Plaintiff's handcuff injuries and the events that occurred in the Healthcare Unit or that he knew what would happen to Plaintiff while in the Healthcare Unit. Therefore, Plaintiff should not have been allowed to seek damages on these issues against Defendant Johnson and judgment should be entered in Defendant's favor.

Instead, Plaintiff was allowed to hold Defendants liable based on *respondeat superior* which is not allowed. As such, Plaintiff should not have been allowed to proceed against Defendants on these issues.

  **IV. The Evidence Was Insufficient to Find Defendants Violated Plaintiff's Constitutional Rights**

  **A. Fourth and Eighth Amendment Rights Concerning Strip Searches**

As argued previously before this Court, Defendants maintain that no Fourth

-10-

Amendment cause of action was remanded in this matter. Nevertheless, should a Fourth Amendment cause of action survived remand, as argued above, under Peckham, to the extent Plaintiff maintained the strip search was performed to punish him, no such Fourth Amendment right was violated here. When Plaintiff admitted under oath that he not dispute that Defendants had legitimate penological reasons related to security in conducting strip searches, any cause of action Plaintiff had under the Fourth Amendment ceased to exist. As such, Plaintiff's testimony established that Defendants did not violate Plaintiff's Fourth Amendment rights in this matter and judgment should be entered in Defendants favor on this issue.

Body searches of inmates that are maliciously motivated, unrelated to institutional security, and totally without penological justification are considered unconstitutional under the Eighth Amendment. Whitman v. Nesic, 368 F.3d 931 (7th Cir. 2004)(strip search of an inmate who felt humilated in part by remaining naked for 20 minutes until he could produce a urine sample). For the Eighth Amendment, as argued above, Plaintiff failed to present sufficient evidence establishing Defendants' intent to humilate, punish, and harrass Plaintiff by conducting the strip search at issue. Plaintiff rests Defendants' intent on a chronology of events and a nodding of the head such that intent could be inferred. However, Defendants' testimony concerning their intent overcame Plaintiff's inferrence. Furthermore, Defendants presented sufficient evidence showing the strip search was not maliciously motivated, was related to institutional security, and was penologically justified. As such, judgment should be been entered in Defendants' favor on this issue.

### B. First Amendment Rights

Under the mixed-motive standard in a First Amendment claim, a defendant can rebut a plaintiff's *prima facie* case by showing that although the defendant's conduct was a sufficient condition of the plaintiff's injury, "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." Greene v. Doruff, 660 F.3d 975, 980 (7th Cir. 2011). This principle rests on the proposition that "[w]ithout an injury, there is no tort, including a constitutional tort such as infringing a person's freedom of speech." Id. at 978. Where a plaintiff would have suffered the same fate in the absence of a defendant's conduct, such that "the defendant's improper motive would have done no work, had no effect, [and] left the world unchanged, . . . . relief for the violation of a constitutional right is inappropriate." Id. at 978–79. "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." Id. at 979 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285–86 (1977)).

For Defendant Johnson, Plaintiff's case rests entirely on his testimony that he showed Defendant Johnson a copy of his grievance and the Briley memo and that he nodded his head at Defendant Etheridge. However, Plaintiff offered no evidence of motive or retaliatory animus. In contrast, Defendants offered nondiscriminatory reasons for strip searching Plaintiff on June 9, 1999, what they observed on Plaintiff's body, that they believed Plaintiff was in possession of contraband, and why Plaintiff would have been taken to the Healthcare Unit. Although Plaintiff disputed the presence of a foreign substance in his anal cavity, both Defendants testified they believed Plaintiff was in possession of a foreign substance and in order to confirm this, Plaintiff needed to be

seen by medical staff. Furthermore, Defendant Johnson testified that he had no discussions about Plaintiff before this incident and did not tell officers (Defendant Etheridge C/O Bryant) to harass Plaintiff. Additionally, Defendant Johnson explained what his head nodding meant, i.e. that it was of no significance other than to let Defendant Etheridge know that Plaintiff was next to be searched. Yet, Plaintiff wanted the jury to infer that head nodding meant that Defendant Etheridge was to fake the observation of contraband on Plaintiff's body during the search and extend the strip search. The only person who knew what Defendant Johnson meant when he nodded his head was Defendant Johnson. Furthermore, Defendants presented evidence that regardless of Plaintiff's grievance, Plaintiff would still have been strip searched. Because Plaintiff failed to show Defendant Johnson's acts on June 9, 1999, were in retaliation for Plaintiff's grievance and the Briley memo, judgment should be granted in favor of Defendant Johnson on this issue.

Likewise, Plaintiff never testified that he showed Defendant Etheridge any grievances or the Briley memo. Furthermore, even if Defendant Etheridge had heard the Briley memo read at roll call, there is nothing within the memo that says it concerns Plaintiff's grievances, nor did Plaintiff elicit any testimony from Defendant Etheridge saying he was aware of Plaintiff's grievances prior to strip searching him on June 9, 1999. In this case, Plaintiff bore the burden in establishing by a preponderance of the evidence that Plaintiff informed Defendant Etheridge of his grievance and prison rules regarding strip searches. Plaintiff failed to do so. Likewise, Defendant testified that regardless of Claimant's grievances, Plaintiff would still have been subject to a strip search and searched. Defendant Etheridge testified to not having any motive or

retaliatory animus towards Plaintiff. As for C/O Bryant's alleged smirk or laugh, there was no evidence presented concerning the motive or meaning behind the smirk or laugh; merely that these actions happened. As such, judgment should be granted in favor of Defendant Etheridge on this issue.

## V.   The Evidence was Insufficient for an Award of Punitive Damages

The evidence was insufficient to support an award of punitive damages, and judgment as a matter of law should have been entered in Defendants' favor on this issue. The United States Supreme Court has made it clear that plaintiffs must meet a subjective standard in order to recover punitive damages. In <u>Kolstad v. American Dental Assoc.</u>, 527 U.S. 526, 119 S.Ct. 2118 (1999), an employment discrimination case brought under 42 U.S.C. §1981a, the court said that the focus of such a case must be on the actor's state of mind. <u>Id</u>. at 535. While such damages may be awarded where an employer acts with "malice" or "reckless indifference" to the plaintiff's federally protected rights, those terms "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." <u>Id</u>. (Emphasis added). In other words, additional evidence beyond the evidence which is required to support liability is required in order to warrant punitive damages. <u>EEOC v. Indiana Bell Telephone Co.</u>, 256 F.3d 516, 527 (7th Cir. 2002). A finding of liability does not automatically mean that punitive damages are warranted.

Although <u>Kolstad</u> deals with a Title VII case brought after the 1991 amendments to the Civil Rights Act, amendments which permitted juries to award punitive damages, the standard is not different in cases brought under Section 1983. <u>Iacobucci v. Boulter</u>, 193 F.3d 14, 25 n.7 (1st Cir. 1999)(In enacting 42 U.S.C. §1981a, which permits punitive

damages in Title VII cases, Congress followed the language of Smith v. Wade, 461 U.S. 30 (1983), indicating that punitive damages under Sec. 1983 and Title VII are to follow the same standard.). The Seventh Circuit has also cited Kolstad as the standard to be applied in a Section 1983 case. Pearson v. Ramos, 237 F.3d 881, 886-87 (7th Cir. 2001); Molnar v. Booth, 229 F.3d 593, 604 (7th Cir. 2000). Pearson involved a prison inmate who claimed that a prison superintendent's imposition of four consecutive 90-day periods denying him yard privileges (after he committed four disciplinary infractions) constituted cruel and unusual punishment in violation of the 8th Amendment. A jury awarded compensatory and punitive damages; the judge let the compensatory award stand but reduced the punitive award from $50,000 to $15,000.

The Seventh Circuit reversed the entire verdict, and in doing so, noted that "even if we are wrong in thinking that there was no violation of the plaintiff's rights," upholding the punitive award was error. The court observed that the sanction imposed on the prisoner by the superintendent was authorized by state law and that there was insufficient evidence of the state of mind of the defendant to justify a finding of liability. Id.

The state of mind required to make out a Section 1983 claim differs "importantly" from that required to justify punitive damages. Iacobucci v. Boulter, 193 F.3d 14, 26 (1st Cir. 1999) (cited with approval in Pearson v. Ramos, 237 F.3d at 887). The former requirement relates only to the conduct, not to the consequence; that is, it entails an intent to do the act, not to effect a civil rights violation. Even conduct which is objectively unreasonable is insufficient, in itself, to support punitive damages.

Iacobucci v. Boulter, 193 F.3d at 26[1].

The Seventh Circuit has cited Iacobucci as authority for the standard to be applied to awards of punitive damages in cases brought pursuant to 42 U.S.C. §1983. Pearson v. Ramos, 237 F.3d 881 (7th Cir. 2001); Kyle v. Patterson, 196 F.3d 695, 698 (7th Cir 1999). In Kyle the Court found that fact that arrestee's constitutional rights were violated did not justify punitive damages when the evidence did not meet the standard in Smith and Iacobucci. 196 F3d at 698. In Pearson, the court found that there was no justification for submitting the question of punitive damages to the jury when the standards set out in Kolstad and Iacobucci were not met. 237 F.3d at 886-87.

The minimum showing for punitive damages is that the defendant violated the plaintiff's civil rights in the face of a perceived risk that his or her actions will violate federal law. EEOC, 256 F.3d at 527. However, punitive damages are not appropriate if the defendant, although perceiving a risk, nonetheless believed that his or her actions were lawful. Id. The United States Supreme Court has recognized that, even in cases of intentional discrimination, punitive damages are not always appropriate:

> There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other

---

[1] The Iacobucci court also noted that in previous cases, it had interpreted Smith v. Wade, 461 U.S. 30 (1983), a seminal case on punitive damages, to mean that the state of mind necessary to trigger liability for the civil rights claim was "at least as culpable as that required to make punitive damages applicable." 193 F.3d at 27. The court observed that "Kolstad [sic] plainly rejects that interpretation." Id.

>statutory exception to liability.

Kolstad, 527 U.S. at 536-37 (explaining application of punitive damages to cases where the defenses are defined by Title VII standards).

Affirmative evidence is required which demonstrates that the defendant had some awareness of the standards applicable to plaintiff's claims, knew that there was a risk that he was violating plaintiffs' rights, and proceeded in reckless disregard of the risk. EEOC, 256 F.3d at 527.

Here, there was insufficient evidence for the issue of punitive damages to go to the jury and judgment should have been entered for Defendants as a matter of law. Plaintiff cannot meet the threshold showing for an award of punitive damages because no evidence in the record shows that Defendants strip searched Plaintiff on June 9, 1999, in such a manner that they subjectively perceived their actions as violating federal law. To the contrary, Defendants testified that they did not believe their actions were improper or unconstitutional, would not have ordered others to violate Plaintiff's constitutional rights, and that they did not have any ill will towards Plaintiff. Plaintiff provided no testimony concerning Defendants' motive or intent. Instead, Plaintiff merely wanted the jury to believe an evil or malicious motive or intent was present because Plaintiff was strip searched in a manner he did not like. Because Plaintiff provided no evidence concerning Defendants intent and Defendants did produce evidence showing they believed their actions were lawful and possessed no ill will towards Plaintiff on the day of the search, judgment should be granted in favor of Defendants on this issue.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court enter judgment in their favor.

Respectfully Submitted,

DARRYL JOHNSON and MICHAEL ETHERIDGE, JR.,

Defendants,

BY: LISA MADIGAN, Attorney General of Illinois, Its Attorney

Attorney for Defendants,

By: s/Julie Morgan
Julie Morgan, #6271352
Attorney for Defendants
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-2077
Facsimile: (217) 524-5091
jlmorgan@atg.state.il.us

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS - URBANA DIVISION

| | | |
|---|---|---|
| TIBERIUS MAYS, N-92625 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 01-1254 |
| | ) | |
| JEROME SPRINGBORN, DARRYL JOHNSON, | ) | |
| MICHAEL ETHERIDGE, THOMAS HOYT, and | ) | |
| KEVIN HANTELMANN, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2014, I electronically filed Defendants' Memorandum of Law in Support of Defendants' Renewed Motion for Judgment as a Matter of Law with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ms. Logan Steiner
lsteiner@mayerbrown.com

Mr. Joseph Snapper
jsnapper@mayerbrown.com

Mr. Marc Kadish
mkadish@mayerbrown.com

Ms. Abigale Bartine
abartine@mayerbrown.com

and I hereby certify that on June 24, 2014, I mailed by United States Postal Service, the document to the following non-registered participant:

Respectfully submitted,

 s/Julie Morgan
Julie Morgan, #6271352
Attorney for Defendants
Office of the Illinois Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-2077
Facsimile:  (217) 524-5091
jlmorgan@atg.state.il.us