E-FILED
Monday, 11 August, 2014 11:38:56 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TIBERIUS MAYS, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> JEROME SPRINGBORN, et al., ) <br> ) <br> Defendants. ) | Case No. 01-CV-1254 |

## OPINION

On May 22, 2014, following the presentation of evidence at jury trial, the jury returned a verdict for Plaintiff Tiberius Mays and against Defendants Darryl Johnson and Michael Etheridge on Counts 2 and 3 of the Indictment. The jury returned a verdict for Defendant Jerome Springborn on Counts 2 and 3 of the Indictment and for Defendants Hantelmann and Hoyt on Count 1 of the Indictment. On Counts 2 and 3, the jury awarded Plaintiff a total of $2,500 in compensatory damages and $10,000 in punitive damages against Defendants Johnson and Etheridge. Defendants filed a Motion for New Trial (#375) on June 24, 2014 and a Renewed Motion for Judgment as a Matter of Law (#381) on July 2, 2014. Those motions are now fully briefed. For the following reasons, both motions (#375, 379) are DENIED.

RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants raise multiple arguments in their Renewed Motion for Judgment as a Matter of Law (#381). The court will address each argument in turn.

Standard

Federal Rule of Civil Procedure 50(b) states:

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No

later than 28 days after the entry of judgment- or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged- the movant may file a motion for a renewed judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

(1) allow judgment on the verdict, if the jury returned a verdict;

(2) order a new trial; or

(3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could be reasonably based on that evidence. *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). The court does not make credibility determinations or weigh the evidence and, although the court reviews the entire record, the court must disregard all evidence favorable to the moving party that the jury was not required to believe. *Passananti*, 689 F.3d at 659. When faced with such a motion, the court is obliged to leave the judgment undisturbed unless the moving party can show that no rational jury could have brought in a verdict against it. *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007).

<u>Qualified Immunity</u>

Defendants first argue that they were entitled to qualified immunity because they were government officials performing discretionary functions that did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff responds that he claimed, and the verdict indicates the jury believed, that Defendants made up the fact they saw a white substance in Plaintiff's anal cavity and subjected him to an invasive and humiliating cavity search. Plaintiff claims this was done in retaliation for his informing Defendants that they were violating prison rules and not properly doing their jobs. Plaintiff

2

argues that such evidence, believed by the jury, is enough to overcome qualified immunity.

"Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known.'" *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713 (7th Cir. 2013), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "'Qualified immunity balances two important interests- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Abbott*, 705 F.3d at 713, quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "To overcome the defendant's invocation of qualified immunity, the plaintiff must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713. Once the qualified immunity defense is raised, the burden is on the plaintiff to defeat the defense and show that she had clearly established rights that the defendant violated. *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012).

Under the facts adduced at trial, and testified to by Plaintiff, it is reasonable to find that qualified immunity did not apply. Based on Plaintiff's allegations and testimony, Defendants subjected him to an extended and humiliating strip search, against prison rules, in retaliation for Plaintiff exercising his First Amendment rights. Defendants argue that Plaintiff cannot show that Defendants were able to understand from the relevant case law that the strip search violated Plaintiff's constitutional rights. However, "some governmental actions are so clearly beyond the pale that a reasonable person should have known of their unconstitutionality even without a closely analogous case." *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000). The Seventh Circuit has held that federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, and that a reasonable public

official in Defendants' positions would understand that retaliating against a prisoner on the basis of his complaints about prison conditions is unlawful. *See Pearson v. Welborn*, 471 F.3d 741-42 (7th Cir. 2006). The court here construes the evidence strictly in favor of the non-moving party. The court agrees with Plaintiff that "[b]eing well aware of the prison rule against strip searches and having conducted a humiliating, retaliatory ruse against [Plaintiff] because he exercised his First Amendment right to complain about Defendants' breaking the prison rule, the constitutional violations are 'so obvious' that Defendants are thus not entitled to qualified immunity."

Personal Involvement of Defendants

Defendants next argue that Plaintiff cannot show Defendants were personally involved in his being taken to the healthcare unit, where he was forced to wear a short gown and was handcuffed, causing injury to his wrists. Plaintiff responds that Defendant Johnson instructed Defendant Etheridge, and possibly others, to carry out a retaliatory ruse against Plaintiff that led directly to a more extreme medical search.

Section 1983 requires "personal involvement" in the alleged constitutional deprivation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). In order for a supervisor to be liable under § 1983, they must be personally responsible for the deprivation of the constitutional right, and to show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

The court agrees with Plaintiff that the evidence at trial, construed strictly in favor of Plaintiff, would allow a rational jury to find Defendants were personally involved in the deprivation of Plaintiff's constitutional rights. As noted by Plaintiff, both Defendants were aware of what would happen to Plaintiff when they escorted him to the healthcare unit. Defendant Johnson testified it was a frequent occurrence for prisoners suspected of having

4

contraband to be taken to the healthcare unit. The court gave jurors instructions that Defendants' actions had to be the proximate cause of harm to Plaintiff. The court also provided a proximate cause instruction for the jury that defined proximate cause as "a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury." Based on the evidence adduced at trial, the court agrees with Plaintiff that a rational jury could have considered the evidence favorable to Plaintiff and made appropriate inferences that Defendants were personally involved and were the proximate cause of the constitutional deprivations and harm suffered by Plaintiff.

<u>Was the Evidence Sufficient to Support a Finding of Violation of Constitutional Rights</u>

Defendants argue that the evidence was insufficient to find they violated Plaintiff's rights under the First, Fourth, and Eighth Amendments. Plaintiff responds that he produced sufficient evidence at trial for a jury to find for him.

Under a sufficiency of the evidence claim on a Rule 50(b) motion for judgment as a matter of law, the evidence available to the jury is viewed in the light most favorable to the non-moving party and the jury's verdict will only be reversed if no reasonable juror could have found in the non-moving party's favor. *Ekstrand v. School District of Somerset*, 683 F.3d 826, 828 (7th Cir. 2012). Having sat through the trial and heard all the evidence, the court reiterates its ruling made at the close of evidence, and finds that there was sufficient evidence for a reasonable juror to have found in Plaintiff's favor and against Defendants Etheridge and Johnson on the First, Fourth, and Eighth Amendment claims.

<u>Was the Evidence Sufficient to Support Punitive Damages</u>

Defendants argue that the evidence was insufficient to support an award of punitive damages, and judgment as a matter of law should have been entered in Defendants' favor on this issue. Defendants claim that Plaintiff cannot meet the threshold showing for an award of

punitive damages because no evidence shows that they strip searched Plaintiff in such a manner that they subjectively perceived their actions as violating federal law and that Plaintiff provided no testimony concerning Defendants' motive or intent. Plaintiff responds that he provided evidence from which the jury could *infer* such motive or intent.

The punitive damages jury instruction in this case, modeled directly on Seventh Circuit Pattern Instruction 7.24, states that punitive damages should be assessed if the jury finds by a preponderance of the evidence that Defendants' conduct against Plaintiff was malicious or in reckless disregard of Plaintiff's rights. The instruction notes that conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights.

The court has already determined above that, taking all the evidence at trial most favorable to Plaintiff, a rational jury could have found that Defendants, being well aware of the prison rule against strip searches and having conducted a humiliating, retaliatory ruse against Plaintiff because he exercised his First Amendment right to complain about Defendants' breaking the prison rule, the constitutional violations were 'so obvious' that Defendants were not entitled to qualified immunity. Applying similar reasoning to punitive damages, it is not unreasonable for a rational jury to have found that, based on inferences from the evidence presented by Plaintiff, Defendants, at the very least, acted with reckless disregard to Plaintiff's rights when they subjected him to an extensive and humiliating strip search in retaliation for Plaintiff's exercise of his First Amendment rights. Punitive damages were properly awarded. Plaintiff's Renewed Motion for Judgment as a Matter of Law (#381) is DENIED.

MOTION FOR A NEW TRIAL

Defendants raise multiple arguments in their Motion for a New Trial (#375). The court will address each argument in turn.

Standard

Under Federal Rule of Civil Procedure 59(a)(1)(A), the court may, on motion, grant a new trial on all or some of the issues, after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. Fed. R. Civ. P. 59(a)(1)(A).

Jury Verdict Against Manifest Weight of the Evidence

A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party. *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). A district court's ruling on a motion for a new trial is discretionary, and will only be reviewed by an appellate court for an abuse of discretion. *Venson*, 749 F.3d at 656. The court has already dealt with Defendants' contention that the verdict was against the manifest weight of the evidence in addressing the Renewed Motion for Judgment as a Matter of Law. Because this case was essentially a swearing contest and nothing precluded the jury from crediting Plaintiff's account of what occurred, Plaintiff's testimony was sufficient to support the verdict. *See Venson*, 749 F.3d at 658.

Whether Compensatory Damages Award was Excessive and Not Rationally Connected to the Evidence

Defendants argue the $1,250 awarded to Plaintiff in counts 2 and 3 is excessive and not rationally connected to the evidence. Defendants argue that the award was based on the wrist injuries suffered via the handcuffs in the healthcare unit, and because Plaintiff could not show Defendants' personal involvement, the award was excessive and only $1.00 in nominal damages should have been available to Plaintiff. Plaintiff responds that Defendants were personally involved in and were the proximate cause of his injury, and thus the compensatory damages award was appropriate.

To determine whether an award of compensatory damages is excessive, we consider whether the damages awarded were: (1) monstrously excessive; (2) had no rational connection

between the award and the evidence; and (3) were roughly comparable to awards made in similar cases. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013).

Here, the court instructed the jury, using the Seventh Circuit Pattern Instruction 7.23 as a guide, that if it found Plaintiff had suffered a physical injury, then in assessing compensatory damages, the jury could consider, if any, what psychological pain and suffering Plaintiff may have endured. The court has already determined above that a rational jury, based on the evidence favorable to Plaintiff adduced at trial, could have found that Defendants were personally involved in the injury suffered by Plaintiff. The damages award of $2,500 is not "monstrously" excessive and the court finds that it is a modest award and has a rational connection to the evidence heard and believed by the jury. The jury believed Defendants' proximately caused Plaintiff's injury and that the actions of Defendants led to Plaintiff being housed in the healthcare unit and that Defendants were aware their unlawful actions would lead to Plaintiff being placed in said unit. Therefore, the court finds that the compensatory damages award should not be disturbed.

<u>Whether the Punitive Damages Award Was Unconstitutionally Excessive</u>

Defendants argue that, even if there was sufficient evidence to go to the jury on punitive damages, the award was excessive to the point of constituting a denial of due process. Plaintiff responds that Defendants' conduct was sufficient to elicit the jury's punitive damages award.

Punitive damages violate the Due Process Clause only when an award can fairly be characterized as "grossly excessive" in relation to a state's legitimate interests in punishing unlawful conduct and deterring its repetition and the Supreme Court has instructed courts to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual and potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *E.E.O.C.*, 707 F.3d at 838, *citing*

8

*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

The first guidepost relates to the reprehensibility of the defendant's conduct, "and is '[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'" *E.E.O.C.*, 707 at 838, *quoting Gore*, 517 U.S. at 575. With regard to the reprehensibility guidepost the Supreme Court has stated:

> "We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced by an indifference to a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 419 (2003).

The court agrees with Plaintiff. Defendants claim that their conduct was not reprehensible because they only performed the strip search to determine if there was contraband on Plaintiff. However, as has been repeated many times in this opinion, the jury has already determined that the strip search was unlawful and apparently believed the evidence put forth that was favorable to Plaintiff and supported Plaintiff's theory of the case: namely, that Defendants performed an invasive and humiliating strip search of Plaintiff in retaliation for Plaintiff's exercise of his First Amendment rights, and that Defendants' claim of contraband was merely a ruse to justify the search. The jury also apparently believed that Defendants, through their actions, were the proximate cause of the harm and injury suffered by Plaintiff. This tortious conduct could be viewed as indifference to a reckless disregard of Plaintiff's health or safety and

9

that the harm was the result of intentional malice, trickery, or deceit. *See State Farm*, 538 U.S. at 419. The court finds the conduct could be classified as reprehensible so as to satisfy that first and most important indicium of the reasonableness of a punitive damages award. *See Gore*, 517 U.S. at 575.

Next, the second guidepost concerns the disparity between the actual and potential harm suffered by the plaintiff and the punitive damages award. In *State Farm*, the Supreme Court noted that it had been reluctant to identify concrete constitutional limits on the ratio between harm to the plaintiff and the punitive damages award, and declined to impose a bright line ratio that a punitive damages award could not exceed, but stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. The Court noted that, in the past, it had concluded that a punitive award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety and, while that ratio was not binding, it was instructive. *State Farm*, 538 U.S. at 425. Nonetheless, because there were no rigid benchmarks that punitive damages may not surpass, ratios greater than those the Court had previously upheld may satisfy due process where a "particularly egregious" act had resulted in only a small amount of economic damages. *State Farm*, 538 U.S. at 425.

Here, the ratio of punitive ($10,000) to compensatory ($2,500) damages was 4:1, and thus comported with the line of constitutional propriety endorsed by the Court. Even so, it is arguable, based on what evidence the jury believed to come to its verdict, that Defendants' behavior was "particularly egregious." Either way, the court finds the disparity between the punitive damages award and the compensatory damages award to be reasonable based on the facts adduced at trial favorable to Plaintiff.

The third component is comparable cases. Defendants concede they have no comparable cases to cite. Because the first two guideposts favor the reasonableness of the punitive damages

award, the court denies Defendants' motion on this ground.

Jury Instructions

*Court's Instruction on Plaintiff's First Amendment Claim*

Defendants reiterate the argument made at trial that the court erred in submitting to the jury Plaintiff's proposed instruction on his First Amendment claim. Defendants argue that the court's instruction prejudiced them in that it foreclosed the jury's consideration of whether Plaintiff would have been subjected to an extended group strip search regardless of his grievance. Defendants further argue that the instruction's statement that the jury should consider whether each Defendant "subjected the plaintiff to an extended group strip search" likely confused the jury into thinking the events in the healthcare unit cast doubt as to whether or not the strip search in the housing unit should have been performed or extended. Plaintiff responds that the court's instruction conforms to the Seventh Circuit's pattern instruction and its prior rulings in this case.

Defendant objects to the following passage from the jury instruction:

> "If the plaintiff has proved each of these things by a preponderance of the evidence, then you must consider each defendant's claim that he would have subjected the plaintiff to an extended group strip search anyway. To succeed on this claim, each defendant must prove by a preponderance of the evidence that even though the plaintiff's informing the defendants of his grievance and the prison rules governing strip searches was a reason for his decision to subject the plaintiff to an extended group strip search, there were other reasons which would have led the defendant under consideration to subject the plaintiff to the same extended group strip search even if the plaintiff had not informed the defendants of his grievance and the prison rules governing strip searches."

The court disagrees with Defendants. The instruction at issue mirrors almost exactly the

11

language of Seventh Circuit Pattern Instruction 6.01. The language also reflects language the Seventh Circuit demanded the court include in its instruction on this claim in their two opinions. *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013); *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). Further, in mirroring the Pattern Instruction 6.01 language, the court was following the mandate of the Seventh Circuit in *Mays*. *See Mays*, 719 F.3d at 635 ("The Seventh Circuit Pattern Civil Jury Instructions 6.01 and 6.02 (2005) say the same thing in slightly different words."). The court believes the instruction it gave the jury properly shifted the burden and did not confuse the jury. It adhered to the pattern instructions and the language contained in the two Seventh Circuit remands to properly explain the burden shifting in a First Amendment retaliation claim.

Fourth Amendment Jury Instruction

Defendants allege the court erred by including "reasonableness" in its instructions concerning the Fourth and Eighth Amendments. Defendants also argue the Fourth Amendment claim did not survive Seventh Circuit review of this case and should not have been included in the jury instructions. The court rejects Defendants' latter argument about the Fourth Amendment claim's survival in this case for the same reasons articulated in its Opinion (#351) of May 14, 2014. The court refers Defendants to that opinion. As to whether a Fourth Amendment claim in a prison contains a reasonableness requirement, the U.S. Supreme Court decision in *Bell v. Wolfish*, 441 U.S. 520 (1979), in addressing a Fourth Amendment claim in a case involving cavity searches of prison inmates, stated that "the searches must be conducted in a reasonable manner." *Bell*, 441 U.S. at 560. Therefore, as the Fourth Amendment claim survived Seventh Circuit review and remained viable in this case, the court believes the instruction it gave was appropriate.

Valid Penological Purpose Instruction

Defendants argue the court's "valid penological purpose" instruction containing the term

"good faith" misstated the law and prejudiced them. The instruction in question states:

> "When I use the term 'valid penological purpose' in these instructions, I mean a good faith action by the defendants to protect the security and economic interest in saving staff resources of the penitentiary. In deciding whether the defendants had a valid penological purpose, bear in mind that courts, and therefore juries, must give deference to good faith judgments of the persons responsible for the administration of the penitentiary."

First, the court would note that this same instruction concerning good faith in a valid penological purpose was given by Judge Baker at the first trial, and was apparently not objected to by the Seventh Circuit. Further, Defendants have not explained just how the "good faith" language prejudiced them. If anything, the instruction benefitted Defendants by instructing the jury that it "must give deference to good faith judgments of the persons responsible for the administration of the penitentiary." Finally, the Seventh Circuit has used "good faith" in describing actions taken by penal institutions in pursuing their objectives. In *Gibbons v. Higgins*, 73 F.3d 364, 1995 WL 761743 (7th Cir. Dec. 20, 1995), the court, in considering a § 1983 claim under the Eighth Amendment where an inmate was sprayed with a water cannon by prison guards for refusing to submit to a search, stated "[t]he Eighth Amendment is violated only where the force used involves the unnecessary and wanton infliction of pain, no liability arises if the guard uses reasonable physical force in good faith and in pursuit of legitimate penological or institutional objectives." *Gibbons*, 73 F.3d 364, 1995 WL 761743, at *6. The court cited to U.S. Supreme Court opinions that stated that, whenever prison officials were accused of using excessive physical force, the key question was whether the force was applied in a "good-faith" effort to maintain and restore order or discipline as opposed to causing malicious harm. *Gibbons*, 73 F.3d 364, 1995 WL 761743, at *6. Thus, the court concludes that it was not error to include the "good faith" language in the contested instruction.

Punitive Damages Instruction

Defendants argue the court's punitive damages instruction was given in error because it failed to instruct the jury accurately on the law of punitive damages because "it failed to state that the jury may only assess punitive damages if Defendants' conduct was taken with knowledge that it may violate the law." Plaintiff responds that the court has already ruled on this matter in Plaintiff's favor and that the instruction models almost word for word Seventh Circuit Pattern Instruction 7.24.

First, the court notes it has already ruled on this issue, and refers Defendants to the ruling it made during trial. Second, the punitive damages instruction is almost word for word modeled after the Seventh Circuit Pattern Instruction 7.24. Further, the court notes that punitive damages are available in prisoner claims under 42 U.S.C. § 1983. *Washington v. Hively*, 695 F.3d 641, 644 (7th Cir. 2012). In a § 1983 case, a court should submit a punitive damages instruction to the jury "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007), *quoting Smith v. Wade*, 461 U.S. 30, 56 (1983). The Seventh Circuit Pattern Instruction 7.24 given by the court states that the jury "may assess punitive damages only if you find that [Defendants'] conduct was malicious or in reckless disregard of Plaintiff's rights" and goes on to define malicious conduct and reckless disregard for the jury, and thus conforms to the requirements for punitive damages as expressed by the Seventh Circuit in *Alexander*. The court would also note that Judge Baker provided a nearly identical punitive damages instruction and option for the jury in the April 2011 trial, and he was not reversed or criticized by the Seventh Circuit in this regard, and therefore punitive damages has become a part of the law of the case. Therefore, Defendants' Motion for a New Trial (#375) is DENIED.

IT IS THEREFORE ORDERED:

Both Defendants' Renewed Motion for Judgment as a Matter of Law (#381) and Motion for New Trial (#375) are DENIED.

ENTERED this 11<u>th</u> day of August, 2014.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE